Filed 12/14/15  Nous, S.r.l. v. Gori CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| NOUS, S.r.l.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VITTORIO CECCHI GORI, et al.<br><br>    Defendants and Appellants. | B256996<br><br>(Los Angeles County<br>Super. Ct. BC466028) |

APPEALS from orders of the Superior Court of Los Angeles County, Holly E. Kendig, Judge.  Affirmed.

Blakely Law Group, Brent H. Blakely and Michael Marchand for Defendant and Appellant Vittorio Cecchi Gori.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, Mark J. Rosenbaum and Stephen M. Levine for Defendants and Appellants Cecchi Gori Pictures and Cecchi Gori USA, Inc.

Alston & Bird, Peter E. Masaitis and Evan W. Woolley for Plaintiff and Respondent.

_____

**INTRODUCTION**

This is an action by an Italian corporation to domesticate an Italian judgment and to recover the proceeds of a California judgment. The background of the underlying controversy is complex, involving the relationship of several foreign corporations and their subsidiaries, allegations of fraudulent transfers of millions of dollars, and one of the largest corporate bankruptcies in Italian history. The issues in this appeal, however, are relatively straightforward. Each the three defendants appeals a discovery order that imposed monetary sanctions in the amount of $5,460. After determining that the orders are appealable, we conclude the trial court acted well within its discretion in imposing monetary sanctions, and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.      *The Allegations in the Complaint*

This action is one of a series of lawsuits in the United States and Italy, all arising out of the collapse of the financial empire of Vittorio Cecchi Gori, an Italian businessman and film producer. According to the allegations in the complaint in this action, Cecchi Gori fraudulently transferred millions of dollars from the bankruptcy estate of his limited liability company, Fin.Ma. Vi S.p.A (Finmavi), in an effort to put assets out of the reach of creditors. Cecchi Gori was the sole shareholder, president, and chairman of the board of directors of Finmavi. "At its peak, [Finmavi] operated more than 40 companies in the business of film production, distribution, exhibition, television multimedia, real estate, and professional soccer."

Nous S.r.l. (Nous) is an Italian limited liability company in the real estate business that Cecchi Gori used to own. Nous is now undergoing liquidation under the jurisdiction of the Court of Rome, which appointed Davide Franco and Sergio Torri as co-liquidators of Nous to satisfy the debts of Nous's creditors. Nous owns 100 percent of a Luxembourg company called Promint Holdings S.A., which in turn owns 100 percent of

2

a Dutch company called Cecchi Gori Group Europe B.V., which in turns owns 100 percent of the two United States companies involved in this action, Cecchi Gori Pictures and Cecchi Gori USA, Inc. Based on these allegations, Nous claimed that it "is the ultimate parent" of Cecchi Gori Pictures and Cecchi Gori USA.

Nous alleged that for many years Cecchi Gori "systematically transferred funds from one entity to another entity within his control for his own personal benefit and to the detriment of creditors. For example, Cecchi Gori authorized [Finmavi] to finance multi-million dollar loans that were both interest-free and unsecured to other entities controlled by Cecchi Gori, hid assets from [Finmavi] and other entities within Cecchi Gori's control for his own personal benefit at the detriment of the company's creditors and utilized [Finmavi's] funds for his own personal expenses." Nous alleged that Cecchi Gori transferred over $8.5 million to Nous, over $2 million to Cecchi Gori Pictures, and over $45 million to Cecchi Gori USA.

Nous alleged that in 2005 Finmavi filed in the Ordinary Court of Rome the Italian equivalent of a Chapter 11 bankruptcy petition, with "more than $927 million in debt." Nous alleged that in October 2006 the Bankruptcy Division of the Ordinary Court of Rome rejected Cecchi Gori's proposed reorganization plan. The Court of Rome subsequently confirmed Franco and Torri as co-liquidators of Nous. According to Nous, Nous owed Finmavi almost $9 million, and Cecchi Gori Pictures and Cecchi Gori USA collectively owed Finmavi "approximately $47 million as a result of funds Cecchi Gori caused [Finmavi] to transfer to [these two] entities."

In 2008 Cecchi Gori Pictures and Cecchi Gori USA became involved initially as defendants in a lawsuit in Los Angeles County Superior Court filed by a former officer of Cecchi Gori Pictures and Cecchi Gori USA named Gianni Nunnari, which the parties refer to as the Nunnari action. Cecchi Gori Pictures and Cecchi Gori USA filed and ultimately prevailed on a cross-complaint in the Nunnari action, and in March 2011 they obtained a judgment in the amount of $13,786,465. In April 2011 the Ordinary Court of Rome, 6th Criminal Division, "issued an order granting Nous recovery of" the $13,786,465 judgment Cecchi Gori Pictures and Cecchi Gori USA had obtained in the

3

Nunnari action. According to Nous, the Italian court, "[i]n order to prevent Cecchi Gori from obtaining, spending or removing the money from the legitimate expectation of creditors," issued an order stating that Nous is entitled to the proceeds of the Nunnari judgment. Nous refers to this order as the "Italian Judgment."

Thus, Nous alleged that the $13,786,465 judgment Cecchi Gori Pictures and Cecchi Gori USA obtained in the Nunnari action "is one of the assets controlled by Nous that is subject to liquidation." Noting that Cecchi Gori Pictures and Cecchi Gori USA were attempting to collect on the Nunnari judgment, Nous alleged that Cecchi Gori was seeking to violate Italian court orders and judgments and "to engage in continued bankruptcy fraud to loot the assets of [Finmavi] and other entities he controls or controlled to put them beyond the reach of creditors." Nous sought a declaration that it is the "ultimate parent company" of Cecchi Gori Pictures and Cecchi Gori USA and is entitled to the proceeds of the $13,786,465 judgment in the Nunnari action, recognition of the Italian Judgment under the Uniform Foreign-Country Money Judgments Recognition Act (Code Civ. Proc., §§ 1713-1724), and the appointment of a receiver for Cecchi Gori Pictures and Cecchi Gori USA.


B.    *The Written Discovery*

Nous propounded sets of written discovery to all three defendants, Cecchi Gori Pictures, Cecchi Gori USA, and Vittorio Cecchi Gori: requests for production of documents, special interrogatories, form interrogatories, and requests for admission. The three defendants responded primarily with objections.

The discovery served by Nous fell into several general categories (four according to Nous in the trial court, five according to Cecchi Gori Pictures and Cecchi Gori USA on appeal). The discovery requests generally sought documents and information relating to ownership and control of Cecchi Gori Pictures and Cecchi Gori USA, recognition of the Italian Judgment, and enforcement of the Nunnari judgment. The discovery also sought financial and other documents and information about the relationship between Vittorio Cecchi Gori and the two entities, Cecchi Gori Pictures and Cecchi Gori USA. Nous

4

refs to this discovery as "facts related to the Finmavi bankruptcy that led to the appointment of [Franco] and [Torri] as liquidators of Nous charged with taking control of [Cecchi Gori Pictures and Cecchi Gori USA's] assets." The three defendants refer to this discovery as "any and all financial information related to [Cecchi Gori Pictures and Cecchi Gori USA] and Vittorio Cecchi Gori."

The defendants asserted various and numerous objections to Nous's written discovery, including that the discovery was not relevant or reasonably calculated to lead to the discovery of admissible evidence, was overbroad, burdensome and oppressive, called for production of documents and information protected by the attorney-client privilege and the work product doctrine, violated Cecchi Gori's privacy rights, sought documents that were public records, and demanded information that was not discoverable under Civil Code section 3295. The defendants also asserted that they had previously produced the documents that Nous was seeking in discovery.

Nous moved to compel further responses to its written discovery, for production of documents, and for monetary sanctions under the discovery statutes. The defendants opposed the motions, arguing that they had produced all documents relating to the ownership and control of Cecchi Gori Pictures and Cecchi Gori USA, which the defendants claimed were the only relevant issues in the case, and that Nous was not entitled in this action to take discovery on any other issues.

### C.     *The Trial Court's Orders*

The trial court heard Nous's discovery motions against Vittorio Cecchi Gori on June 12, 2014, Nous's discovery motions against Cecchi Gori Pictures on June 17, 2014, and Nous's discovery motions against Cecchi Gori USA on June 19, 2014. The court issued minute orders, of 20, 21, and 5 pages, respectively, granting the motions to compel almost in their entirety and imposing monetary sanctions against the responding party and his or its attorneys.

In its June 12, 2014 order the court noted that Cecchi Gori's "opposition fails to address the motions regarding the [requests for production of documents], form

5

interrogatories, and special interrogatories," and "offers no specific arguments regarding why he should not be compelled to provide further responses to these requests." The court also noted that Cecchi Gori "essentially failed to produce any responsive documents whatsoever. While he indicated that he would produce all non-privileged documents with regards to certain requests, he has not done so." The court overruled Cecchi Gori's objections based on relevancy (because relevancy is not the standard for discovery), privacy (finding, after "a careful balancing," that Nous's right to a fair trial outweighed Cecchi Gori's privacy interests), foreign prosecution (concluding the Fifth Amendment did not apply to "potential foreign prosecution"), and other objections, and ordered Cecchi Gori to provide a log of any privileged documents. On the issue of monetary sanctions, the trial court believed Cecchi Gori's discovery responses were "totally inadequate and shocking" and that it was "a clear-cut issue." The court stated: "The court finds that sanctions are appropriate under [Code of Civil Procedure sections] 2030.300[, subdivision] (d), 2031.310[, subdivision] (h), and 2033.290[, subdivision] (d). The imposition of sanctions would not be unjust given the refusal to produce documents or to supplement the responses to the form interrogatories, special interrogatories, and the requests for admission. Defendant [Vittorio Cecchi] Gori and his counsel are ordered to pay sanctions of $5,460 to Plaintiffs within 20 days." Cecchi Gori filed a notice of appeal on June 16, 2014.

The court made similar rulings in its June 17, 2014 and June 19, 2014 orders with respect to Cecchi Gori Pictures and Cecchi Gori USA. After explaining in detail the inadequacies of the responses to Form Interrogatory No. 17.1 with respect to Nous's requests for admission, the court overruled objections similar to those asserted by Cecchi Gori. On the issue of monetary sanctions, the court found: "Sanctions are required against a party who unsuccessfully opposes a motion to compel further responses to interrogatories, [requests for production of documents], and [requests for admissions], unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. [Code Civ. Proc.,] §§ 2030.300, 2031.310, 2033.290. [¶] [Counsel for Nous] states that

6

Nous incurred $5,460 on these four motion[s] for 7 hours at $405 ($2,835) plus one hour at $605 ($605) on the motion, another 2 hours at $405 ($810) on reply, and another 2 hours at $605 for the hearing ($1,210). . . . The court finds the sanctions request appropriate under the circumstances as a total for these four motions." The court ordered Cecchi Gori Pictures and Cecchi Gori USA each "to pay sanctions of $5,460 to plaintiffs' counsel in 20 days." Cecchi Gori Pictures and Cecchi Gori USA filed notices of appeal on July 7, 2014.

## DISCUSSION

### A. *The Orders Are Appealable*

"The existence of an appealable judgment is a jurisdictional prerequisite to an appeal." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126; accord, *Harrington-Wisely v. State* (2007) 156 Cal.App.4th 1488, 1494.) "'Generally, no order or judgment in a civil action is appealable unless it is embraced within the list of appealable orders provided by statute.' [Citation.] With certain exceptions . . . appealable judgments and orders are listed in Code of Civil Procedure section 904.1." (*Walker v. Los Angeles County Metropolitan Transp. Authority* (2005) 35 Cal.4th 15, 19; see *Montano v. The Wet Seal Retail, Inc.* (2015) 232 Cal.App.4th 1214, 1225 ["[a] trial court order is appealable only when made so by statute"].)

Code of Civil Procedure section 904.1, subdivision (a)(12), states that "an order directing payment of monetary sanctions by a party or an attorney for a party" is appealable "if the amount exceeds" $5,000. (See *Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1409, fn. 3 [order imposing $9,000 in monetary sanctions is appealable]; *Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1213 ["[a]n order directing the payment of monetary sanctions by a party or its attorney is immediately appealable if the amount of sanctions exceeds $5,000"].) This rule applies to discovery sanctions orders. (See *Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, 1559 [order imposing $7,500 in monetary sanctions for deposition

7

misconduct was appealable]; *Rail-Transport Employees Assn. v. Union Pacific Motor Freight* (1996) 46 Cal.App.4th 469, 475 ["cases involving misuse of the discovery process which result in sanctions exceeding $5,000 are reviewable by direct appeal"].) Orders imposing monetary sanctions of $5,000 or less are reviewable by writ petition or on appeal after final judgment. (Code Civ. Proc., § 904.1, subd. (b); see *Calhoun v. Vallejo City Unified School Dist.* (1993) 20 Cal.App.4th 39, 44 (*Calhoun*) [review of orders imposing monetary sanctions less than the statutory minimum may """"be upon the granting of a petition for an extraordinary writ""""].)

Each of the three orders in these appeals imposes monetary sanctions in excess of $5,000. Therefore, they are appealable.

Nous acknowledges that "[t]he sum total of the sanctions imposed on four separate motions was $5,460.00 per defendant." Nous argues, however, that the orders are not appealable because "the monetary sanctions cover four separate motions, which in turn address four separate sets of discovery, and expressly notes that the authority for the monetary sanctions flows from three distinct statutory provisions dealing with requests for production, requests for admission, and interrogatories." Nous asserts that, although the figure "$1,365" does not appear in any of the three orders, the trial court effectively sanctioned each defendant "$1,365.00 on each of the four discovery motions." Nous contends that the three defendants are "attempt[ing] to improperly aggregate the sanctions related to four separate motions to meet the $5,000 statutory threshold for appealability under [Code of Civil Procedure section] 904.1[, subdivision] (a)(12)."

Contrary to Nous's assertion, the defendants are not improperly aggregating separate monetary sanctions awards of less than $5,000. To the contrary, it is Nous that is improperly disaggregating a monetary sanctions award of greater than $5,000 into separate monetary sanctions awards of less than $5,000. As Vittorio Cecchi Gori points out, the order "imposes a single monetary sanction against [him] in the amount of $5,460.00," does not "mention the amount of '$1,365,'" "nor in any way indicate[s] that the $5,460 sanction award was to be divided or apportioned in any manner." As Cecchi Gori Pictures and Cecchi Gori USA argue, "[b]ecause the sanctions award was a single

8

amount, payable to a single entity, the $5,4[60] figure (as to each [entity]) cannot be characterized as an aggregated amount."

Discussing the attempted aggregation of two orders imposing monetary sanctions, each of which was below the then-statutory limit of $750, the court in *Calhoun*, *supra*, 20 Cal.App.4th 39 held: "We conclude that because of the Legislature's intent to reduce the number of appeals from monetary sanction orders and the confusion that would result from a rule permitting aggregation, multiple sub-$750 sanctions may not be aggregated under any circumstances to meet the appealability threshold of [former] section 904.1, subdivision (k). We endorse a bright line rule that a sanction order is nonappealable if it does not impose any sanction exceeding $750, and thus an order requiring payment of multiple sanctions, none of which exceed[s] $750, is nonappealable even if the total aggregated sanctions exceed $750." (*Id.* at p. 45.) The court explained: "The Legislature intended to create a $750 'bright line' threshold for appealability of monetary sanction orders. [Citation.] A rule permitting aggregation of 'same conduct' or 'nonseparate' sanctions would blur that bright line. In close cases . . . the sanctioned party would be unsure whether to proceed by appeal or by writ petition. The wrong decision could prove to be procedurally fatal. Bright lines are often too arbitrary to be of much use in the substantive law, but they are usually quite serviceable and even preferred as procedural rules, which should serve as clearly marked guideposts rather than traps for the unwary." (*Calhoun*, *supra*, at p. 45.)

We agree with the reasoning of *Calhoun*. Disaggregation of an order imposing one monetary sanction, just as aggregation of an order or orders imposing multiple monetary sanctions, would violate the bright line rule the Legislature has created for appeals of monetary sanctions orders and would create uncertainty. (See *Calhoun, supra*, 20 Cal.App.4th at p. 45.) Just as a party subject to monetary sanctions may not aggregate orders imposing sanctions of $5,000 or less in order to meet the appellate jurisdictional

9

limit, a party that has been awarded monetary sanctions in excess of $5,000 may not break down the order into component parts to defeat appellate jurisdiction.[1]

It is true, as Nous argues, that Nous filed four separate discovery motions against each defendant, and the court's June 17, 2014 and June 19, 2014 orders imposing monetary sanctions against Cecchi Gori Pictures and Cecchi Gori USA state that the court was awarding $5,460 in monetary sanctions "as a total for these four motions." The court's June 12, 2014 order imposing monetary sanctions against Vittorio Cecchi Gori similarly states that the court was awarding $5,460 in monetary sanctions "given the refusal to produce documents or to supplement the responses to the form interrogatories, special interrogatories, and the requests for admission." The court's monetary sanctions orders also cite separate statutes on which the sanctions were based: Code of Civil Procedure sections 2030.300 (for the motions to compel further responses to Nous's form and special interrogatories), 2031.310 (for the motions to compel further responses to

---

[1]     *Calhoun* criticized *Champion/L.B.S. Associates Development Co. v. E-Z Serve Petroleum Marketing, Inc.* (1993) 15 Cal.App.4th 56, where the court considered a hypothetical similar to the facts of this case: "[W]e recognize that there may be situations where 'aggregating' separate sanction awards in order to reach the [then-applicable] $750 minimum may be appropriate. Let us assume that a defendant simultaneously propounds a set of interrogatories, a set of requests for admission, and a request for production of documents to a plaintiff, and defendant believes plaintiff's responses are inadequate. Defendant files a motion (or perhaps two or three motions) to compel further discovery. Plaintiff then opposes the motion (or motions), asserting the responses are complete. The trial court sides with defendant and issues three separate sanction awards of $600 each. In such a case, it could well be that it is the same conduct which is being sanctioned three times. If so, we think 'aggregation' would be proper." (*Id.* at pp. 59-60.) *Calhoun* explained that "the very example given in [*Champion/L.B.S.*] – multiple sanctions after opposition to a motion to compel further discovery upon three discovery requests – illustrates the difficulty involved in applying such a standard: is there a single course of misconduct in opposing the motion to compel, or are there multiple instances of misconduct in failing to satisfy the three discovery requests?" (*Calhoun*, 20 Cal.App.4th at p. 44.) The court in *Calhoun* concluded that "the standards for aggregation suggested by" *Champion/L.B.S.* were "too vague and unwieldy to be of practical value." (*Id.* at p. 44.) The same concerns about aggregation described by the *Calhoun* court apply to the kind of disaggregation Nous argues for here.

10

Nous's requests for production of documents), and 2033.290 (for the motion to compel further responses to Nous's requests for admission). But Code of Civil Procedure section 901.4, subdivision (a)(12), authorizes appeals from orders, like the orders in this case, that impose monetary sanctions in excess of $5,000. Case law may not allow a party or attorney subject to an order imposing monetary sanctions to aggregate separate sanctions awards in order to reach $5,000 (see *Calhoun*, 20 Cal.App.4th at pp. 43-45), but there is no prohibition on a trial court combining monetary sanctions on separate motions into an aggregate amount in one order. And when a trial court does so, the resulting order is appealable. Therefore, the trial court's three orders here imposing monetary sanctions against each defendant in the amount of $5,460 are appealable.

B.      *Standard of Review*

"We review the order imposing the sanctions for an abuse of discretion, and we resolve any evidentiary conflicts most favorably to the trial court's ruling, reversing 'only if the trial court's action was ""'arbitrary, capricious, or whimsical.'"" [Citation.]' [Citation.]" (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 878 (*Ellis*); see *Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443, 1452 ["[w]e generally review orders for monetary sanctions under the deferential abuse of discretion standard"].) The party or attorney subject to the sanction "has the burden to demonstrate that the trial court erred, and where the evidence is in conflict we will not disturb the trial court's factual findings." (*Ellis*, at p. 878.) The intent of the sanctioned party "is not relevant to the propriety of the monetary sanctions. '"There is no requirement that misuse of the discovery process must be willful for a monetary sanction to be imposed." [Citations.]' [Citation.] '"Whenever one party's improper actions – even if not 'willful' – in seeking or resisting discovery necessitate the court's intervention in a dispute, the losing party presumptively should pay a sanction to the prevailing party."'" (*Ibid.*; see *Parker v. Wolters Kluwer U.S., Inc.* (2007) 149 Cal.App.4th 285, 294 [lack of substantial justification "is implied in the order awarding sanctions"].) Our review is limited, and

11

"issues unrelated to the propriety of the monetary sanction are not cognizable." (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1433.)

C.    *The Trial Court's Orders Imposing Monetary Sanctions Were Not an Abuse of Discretion*

The three defendants do not argue that the trial court abused its discretion in imposing monetary sanctions because, although the court may have properly overruled their objections and granted the motions to compel, they acted with substantial justification in making the objections and opposing Nous's motion to compel. Nor do the defendants argue that there are other circumstances that make the imposition of the sanction unjust. (See Code Civ. Proc., §§ 2030.300, subd. (d), 2031.310, subd. (h), 2033.290, subd. (d).) Instead, the three defendants argue that the trial court abused its discretion in imposing monetary sanctions because their objections were valid and the trial court should not have granted Nous's motions to compel (and therefore, presumably, they acted with substantial justification).

The defendants argue first that in January 2013, eight months before Nous served its written discovery in September 2013, they gave Nous "and its accountants unfettered access to [Cecchi Gori Pictures and Cecchi Gori USA's] corporate records." The trial court, however, found that Cecchi Gori had not produced all responsive documents, and substantial evidence, primarily the several declarations of counsel for Nous, supports that finding.[2] Indeed, the court's ruling took into account that Cecchi Gori Pictures and Cecchi Gori USA may have produced some of the documents Nous was asking for in discovery by ruling that, "[t]o the extent the documents have already been produced as required in conformity with [Code of Civil Procedure sections] 2031.210-2031.250, the

---

[2]    Counsel for Nous stated in his declarations that at one point Cecchi Gori Pictures and Cecchi Gori USA produced 49 pages of documents, but they did not produce most of the documents requested by Nous. Two months after Nous filed its motions to compel, Cecchi Gori Pictures and Cecchi Gori USA "made a supplemental production of 166 pages of documents."

responses should so state and identify which documents already produced are responsive to the particular demand." More generally, the defendants' position that they did not have to respond to formal written discovery and produce documents because they had previously made their books and records available was flawed. Even if a party has voluntarily produced documents earlier in or before the commencement of the litigation, that party must still respond to written discovery and (again) make available for inspection and copying documents responsive to specific requests. The trial court did not abuse its discretion in sanctioning the defendants for unsuccessfully opposing the motions on the ground that they had previously produced documents to Nous.

The defendants argue next that much of the information sought and many of the documents requested by Nous were not discoverable because they were outside the issues framed by the complaint. Specifically, Cecchi Gori Pictures and Cecchi Gori USA argue that discovery related to their ownership and control and to the Italian Judgment Nous seeks to domesticate was legitimate, but discovery relating to the Nunnari action and the financial relationship among the three defendants was not. As the trial court correctly explained in its orders, however, the Nunnari action and its proceeds are at the "heart" of this action, and Nous's discovery requests sought information that would locate and trace "what happened to those funds." Nous's financial discovery properly sought documents and information that was relevant and reasonably calculated to lead to the discovery of admissible evidence regarding several of the main issues in the case, including the ownership and control Cecchi Gori Pictures and Cecchi Gori USA and the whereabouts of the proceeds of the judgment in the Nunnari action. Indeed, financial documents and information often prove ownership and control among related business entities. (See, e.g., *Doak v. Superior Court for Los Angeles County* (1968) 257 Cal.App.2d 825, 835, fn. 8 ["information as to the financial condition of a corporate defendant is admissible and discoverable before trial in an action involving an *alter ego* issue"]; *Iantosca v. Benistar Admin Services, Inc.* (S.D. Ind. 2012) 2012 WL 392994, p. *3 ["bank records may show undercapitalization [and] corporate control"]; *Del Campo v. American Corrective Counseling Services, Inc.* (N.D. Cal. 2008) 2008 WL 4858502, p. *4 [granting motion to

13

compel production of "financial records that may show payment of non-corporate expenses by a corporation, siphoning of funds from the corporation by the dominant stockholder, commingling of funds and other assets, failure to segregate funds of the separate entities, the misuse by an individual of the assets of the corporation, the absence of corporate assets, and undercapitalization or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another"].)

More fundamentally, the defendants' theory that discovery was limited to what they contend Nous needed in order to prove its specific causes of action is inconsistent with California law. Documents and information are discoverable if they are unprivileged and either relevant or reasonably calculated to lead to the discovery of admissible evidence. (Code Civ. Proc., § 2017.010.) Contrary to the defendants' assertion, "[d]iscovery . . . is not confined to the actual issues framed by the pleadings." (*Anti-Defamation League of B'nai B'rith v. Superior Court* (1998) 67 Cal.App.4th 1072, 1095; see *State Farm Mutual Automobile Ins. Co. v. Lee* (2011) 193 Cal.App.4th 34, 40 [California law "allow[s] a broad scope of discovery," including "inquir[y] concerning extraneous issues"]; *Puerto v. Superior Court* (2008) 158 Cal.App.4th 1242, 1249 ["discovery statutes are to be construed broadly in favor of disclosure, so as to uphold the right to discovery whenever possible"]; *Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 98 ["[a]ny doubts regarding relevance are generally resolved in favor of allowing the discovery," and "[b]ecause of the breadth of the standard of discovery relevance, '[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action'"]; *Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 711 [the scope of discovery "is 'broader than the issues' and is not limited to admissible evidence"].) Indeed, "the Discovery Act, by its very terms, authorizes inquiry into even irrelevant matters so long as their revelation may lead to the discovery of admissible evidence." (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1420; see *Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, 1276 ["[f]or discovery purposes, information is relevant if it might reasonably assist a

14

party in evaluating the case, preparing for trial, or facilitating settlement"].) The trial court did not abuse its discretion in sanctioning the defendants for unsuccessfully opposing the motions on the ground that Nous's discovery was irrelevant.

The defendants also argue that the discovery requests seeking communications among the defendants and financial information asked for information that is protected by Cecchi Gori's right of privacy. As the trial court recognized, however, privacy protection is not absolute. In *Puerto v. Superior Court*, *supra*, 158 Cal.App.4th 1242, this court summarized the framework for evaluating such privacy objections. "First, a claimant must possess a 'legally protected privacy interest.' [Citation.] Second, the claimant must have a reasonable expectation of privacy under the particular circumstances, including the customs, practices, and physical settings surrounding particular activities. [Citation.] Third, the invasion of privacy must be serious in nature, scope, and actual or potential impact. . . . If there is a reasonable expectation of privacy and the invasion of privacy is serious, then the court must balance the privacy interest at stake against other competing or countervailing interests, which include the interest of the requesting party, fairness to the litigants in conducting the litigation, and the consequences of granting or restricting access to the information." (*Id.* at pp. 1250-1251.) The trial court properly applied this analysis. Citing *In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1428, the court noted that "[i]n civil cases courts must 'indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of [individuals] to maintain reasonable privacy regarding their financial affairs, on the other.'" The court found that "[t]he documents in question are highly relevant to [Nous's] claims" and that, to the extent any privacy interests were implicated, they "are outweighed by [Nous's] right to a fair trial." No abuse of discretion here.

Finally, the defendants argue Nous's discovery was overbroad and unduly burdensome. None of the defendants, however, submitted any evidence showing the nature and extent of the burden, as required. (See *West Pico Furniture Co. v. Superior Court* (1961) 56 Cal.2d 407, 417; *Mead Reinsurance Co. v. Superior Court* (1986) 188 Cal.App.3d 313, 321.) And the trial court actually sustained the overbreadth objections

15

and limited production of documents to the time period after 2001.  Again, the defendants have not shown an abuse of discretion.

## DISPOSITION

The orders are affirmed.  Nous is to recover its costs on appeal.


SEGAL, J.

We concur:


PERLUSS, P. J.


BECKLOFF, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.